# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| MICHAEL WEXLER )<br>    Plaintiff, )<br>) <br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>    Defendant. ) | Case No. 2:12-CV-98<br>(COLLIER/CARTER) |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income under Title XVI of the Social Security Act.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of:

(1) The plaintiff's Motion for Judgment on the Pleadings (Doc. 6), and

(2) The defendant's Motion for Summary Judgment (Doc. 8)

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Relevant Work Experience

Plaintiff was 39 years old when the ALJ rendered his decision (Tr. 24, 38). He had a twelfth grade education (Tr. 23, 38). The Plaintiff has past relevant work as a sprayer, landscaper, electrical consultant, and cell phone tower supervisor (Tr. 22).

Applications for Benefits and Findings

Plaintiff applied for supplemental security income (SSI) on January 21, 2009, alleging his disability began on August 20, 2008 (Tr. 64, 105-12).[1] The administrative law judge (ALJ) held a hearing on June 18, 2010 (Tr. 30-54). The ALJ issued a decision on July 14, 2010, finding Plaintiff not disabled (Tr. 11-24). The Appeals Council denied Plaintiff's request for review (Tr. 1-4), and the ALJ's decision is now ripe for review under 42 U.S.C. § 1383(c)(3).

Standard of Review - Findings of ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for social security benefits is upon the claimant to show disability. *Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once the claimant makes a prima facie case that he/she cannot return to his/her former occupation, however, the burden shifts to the Commissioner to show that there is work in the national economy which claimant can perform considering his/her age, education, and work experience. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in

---

[1] Plaintiff filed a previous application that was denied on or about August 20, 2008 (Tr. 64, l25). This previous decision was binding and prevents Plaintiff from establishing a prior onset date. See 20 C.F.R. §§ 404.921, 404.955 (2012).

2

the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

As the basis of the administrative decision, that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since January 21, 2009, the date the application was filed (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: failed back syndrome; arthritis in both hands; and depression due to medical reasons (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 416.967(b). However, it is necessary for him to occasionally

change positions from sitting to standing; climbing ramps, ladders and scaffolds is precluded; and he is to avoid working around dangerous machinery and unprotected heights.

5. The claimant is unable to perform past relevant work, except for his job as a desk clerk, which is unskilled vocationally requiring light exertion (20 CFR 416.965).

6. The claimant was born on _____, __ 1970 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 21, 2009, the date the application was filed (20 CFR 416.920(g)).

## Issues Raised

Plaintiff argues the Commissioner's decision is not supported by substantial evidence. In support he raises two separate issues:

(1) Whether the ALJ erred in finding the claimant had the residual functional capacity to perform a limited range of light work as defined in 20 CFR 416.967(B) and in finding that he only has the occasional need to change positions from sitting to standing; and,

(2) Whether the ALJ erred in his assessment of the Plaintiff's credibility when considering the level of pain he experiences.

Medical Evidence

In June 1996, Plaintiff experienced a work-related lifting injury that hurt his back (Tr. 224). In May 1997, Richard W. Duncan, M.D., performed a lumbar fusion at L4-L5, and subsequently released him to perform medium work in September 1997 (Tr. 198-99, 208). Plaintiff worked in various occupations following the surgery, including desk clerk at a hotel, landscaping, electrical construction and cell phone tower construction supervisor (Tr. 116-32). In October 2005, Plaintiff quit his job because he "could no longer be on [his] feet and could not stand and walk very long at a time (Tr. 43, 129-30).

Plaintiff returned to Dr. Duncan 10 years later, in June 2006, for a diagnostic myelogram, the results of which were "absolutely normal" (Tr. 242-43, 291). Dr. Duncan saw no evidence of further impairment and indicated Plaintiff could continue light duty work (Tr. 291). Dr. Duncan noted, "At this point, he is filing for Social Security disability so return to work is not an issue for him." (Tr. 291).

Dr. Duncan referred Plaintiff to Pain Management Associates, where he initially sought treatment in February 2007 and saw C.L. Conrad, F.N.P. (Family Nurse Practitioner) (Tr. 269-71). He was not on any pain medication at the time (Tr. 269). His objective examination indicated he could stand from a seated position without difficulty and could ambulate with a non-antalgic tandem gait (Tr. 270). He indicated he smoked a pack of cigarettes per day. He was advised he should quit because smoking interfered with the back's ability to heal (Tr. 270). Ms. Conrad noted the June 2006 myelogram showed spondylolisthesis of L4 on L5 (Tr. 270).[2]

---

[2]Spondylolisthesis is a condition in which a vertebra slips out of the proper position onto the bone below. PubMedHealth (visited August 9, 2012) http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002240 (Doc. 9, Commissioner's Memorandum at p. 3).

One month later, in March 2007, Plaintiff returned to Pain Management Associates and treated with Timothy Smyth, M.D. (Tr. 267-68). Dr. Smyth noted Plaintiff had filed for Social Security Disability and that Dr. Duncan read his myelogram as "completely normal" except for the hardware from his surgery. The radiologist agreed with this reading. Because the prescription for smoking cessation was not covered by Plaintiff's worker's compensation insurance, he did not believe Plaintiff was going to pay for it out of pocket (Tr. 267). Dr. Smyth administered an epidural steroid injection which was well tolerated (Tr. 268).

At a follow-up visit in April 2007, Dr. Smyth noted the epidural injection had provided mixed results and that he would not repeat it (Tr. 265). He also noted Plaintiff indicated he was not planning to try to return to work (Tr. 265). Dr. Smyth "reminded the reader" that Plaintiff's myelogram and post-myelogram CT were "fairly unremarkable" (Tr. 265). At subsequent visits between May and August 2007, Ms. Conrad noted Plaintiff ambulated with a non-antalgic gait, had no evidence of foot drop, and could rise slowly from a seated position without any difficulty (Tr. 262, 263, 264).[3]

In February 2008, Dr. Smyth placed a trial dorsal column stimulator (DCS) and Plaintiff experienced some relief (Tr. 282, 307-08).[4] In March 2008, Dr. Smyth referred Plaintiff to Scott C. Dulebohn, M.D., a neurosurgeon, for permanent placement of a DCS as it was a more invasive procedure (Tr. 260). Dr. Dulebohn was unable to perform the surgery because

---

[3]Plaintiff did have an antalgic gait at some visits [October and December 2007 (Tr. 259, 261); April 2008 (Tr. 280); May 2008 (Tr. 324); December 2008 ("mildly") (Tr. 316); and January 2009 (Tr. 314)].

[4]A DCS is a device surgically implanted that sens a mild electric current to the spinal cord and interferes with the pain signal from the nerves to the brain. Mayfield Clinic.com (visited August 9, 2012) http://www.mayfieldclinic.com/PE-STIM.htm

Plaintiff had high protein levels in his urine, which contraindicated surgery, was without insurance coverage, and could not obtain a diagnosis or treatment for the condition for a period (Tr. 478-80).

In June and September 2008, Plaintiff's gait was non-antalgic and his pain was "tolerable" (Tr. 320, 323). He indicated his medications helped him "participate in his life" (Tr. 320). Also in the September 2008 visit with Ms. Conrad, Plaintiff reported he was "leaving for vacation in Ohio to do some fishing" (Tr. 320). Ms. Conrad increased his pain medication (Percocet) for the month (Tr. 320).

In January and February 2009, Plaintiff experienced sudden weakness in both legs, was unable to walk any distance, and was prescribed a cane (Tr. 313-14). He had an antalgic gait in February and March 2009 (Tr. 310, 312). In February 2009, Dr. Smyth ordered a CT scan of the lumbar spine that revealed no abnormalities (Tr. 303). In March 2009, Plaintiff's leg pain was less severe (Tr. 310).

In April 2009, Plaintiff had a non-antalgic gait, and Dr. Smyth ordered an EMG/nerve conduction study that showed no evidence of radiculopathy, neuropathy or plexopathy (Tr. 349, 350-52, 404). His non-antalgic gait continued from May 2009 through February 2010 (Tr. 401, 402, 403, 404, 438, 468, 469, 470).

In April 2010, Dr. Dulebohn placed the permanent DCS in Plaintiff's back (Tr. 476-77). Plaintiff saw Dr. Dulebohn's assistant in May 2010, one month after the placement of the DCS, who found Plaintiff was doing well in terms of coverage for his legs, but was still having some back discomfort (Tr. 503). Plaintiff was reducing his pain medication (Tr. 503).

In June 2010, Dr. Dulebohn wrote a letter to Plaintiff's attorney in which he opined that Plaintiff could not carry more than 10 pounds safely without displacing the DCS and anticipated

7

that would be a lifetime restriction (Tr. 511). Dr. Dulebohn further opined Plaintiff could stand or walk for less than 2 hours, limited to 30 minutes in any position, and could not sit for more than 30 minutes without having to change position (Tr. 511). Dr. Dulebohn opined that while Plaintiff could force himself to work through a day, he would probably miss the next several days afterwards due to pain (Tr. 511). He believed Plaintiff was not able to be gainfully employed (Tr. 511).

<u>Analysis</u>

Plaintiff argues the Commissioner's decision is not supported by substantial evidence. In support he raises the following two issues which I will address.

<u>The Assessment of Plaintiff's Residual Functional Capacity</u>

Plaintiff first asserts the ALJ erred in finding he had the residual functional capacity to perform a limited range of light work as defined in 20 CFR 416.967(B) and in finding he only has the occasional need to change positions from sitting to standing.

Plaintiff contends the ALJ improperly viewed his activities of daily living and use of medications in evaluating his RFC (Doc 7, Plaintiff's Brief, pp.7-8). He further contends the ALJ gave insufficient weight to the opinion of treating physician Dr. Dulebohn and did not consider his ability to sustain work (Doc. 7, Plaintiff's aBrief, pp. 9-10). Plaintiff contends he is more functionally limited than the ALJ found.

As the Commissioner points out, the determination of a claimant's RFC is an administrative determination that is reserved to the Commissioner, and not delegated to medical advisors. *See* 20 C.F.R. § 416.946; Social Security Ruling (SSR) 96-5p,1996 WL 374183 (S.S.A.). "The term 'residual functional capacity assessment' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based

upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." *Id*.

In this case the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform a limited range of light work but needed to change positions from sitting to standing occasionally (Tr. 15). He further found Plaintiff could never climb ladders, ropes or scaffolds, and needed to avoid working around dangerous machinery and unprotected heights (Tr. 15). Regarding Plaintiff's activities of daily living, the ALJ characterized him as having "mild" restriction (Tr. 14). The ALJ incorporated verbatim the description of activities of daily living Plaintiff provided to consultative psychological examiner Steven Lawhon, Psy.D., in April 2009 (Tr. 14, 355). Plaintiff indicated he could cook, wash dishes, do laundry occasionally, watch television, and play card games (Tr. 14, 355). He stated on a good day he could attend his son's ball games, but on a bad day he was "on the couch" (Tr. 14, 355).

Plaintiff's report to Dr. Lawhon was consistent with a function report he completed in April 2009, cited by the ALJ, that indicated he could do a few chores (wash dishes, laundry), drive his son to school and cook for him, and feed and take his dog outside (Tr. 16, 141-44). The ALJ noted Plaintiff indicated he took approximately 30 minutes to 1 hour to prepare a meal about three or four times weekly (Tr. 17, 143). The ALJ noted, Plaintiff indicated he spent one hour, three to four times weekly, with breaks, folding towels and doing dishes (Tr. 16, 143). The ALJ further noted Plaintiff alleged he could not do any yard work, but could drive and go out alone (Tr. 17, 144).

9

The ALJ referred to Plaintiff's activities included going to ball games, although he reported it was difficult to sit through an entire ball game (Tr. 17, 145). The ALJ noted that in a September 2009 function report, Plaintiff reported he still watched television, took care of his dogs, played cards maybe twice a month, and played on the play station before bed (Tr. 17, 175-82).

Plaintiff points to a sentence in the ALJ's decision ("He did not undergo any physical therapy treatment before or after his back surgery and it was not until much later that he received an epidural injection." (Doc. 7, Plaintiff's Brief, at p. 7, citing Tr. 16). He contends the ALJ improperly correlated his activities of daily living and physical therapy or epidural injections. However, as noted by the Commissioner, this contention ignores nearly a full page of the ALJ's decision, discussed above, that addressed Plaintiff's testimony and reports of his daily activities as compared to his alleged limitations from his failed back syndrome and arthritis (Tr. 16-17).

I conclude the ALJ properly considered Plaintiff's daily activities as evidence undermining his allegations of disabling pain (Tr. 16-17). *See* 20 C.F.R. § 416.929(c)(3)(i); *Cochran v. Comm'r of Soc. Sec.,* 198 F.3d 244, *5 (Table) (6th Cir. 1999)(ALJ properly considered that claimant took walks daily, could drive for short periods, and spent ample time on computer) ; *Walters v. Sec'y of Health and Human Servs.,* 127 F.3d 525, 532 (6th Cir. 1997)(ALJ properly considered claimant's ability to run errands, walk 2 miles, prepare meals, and drive); *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (ALJ properly considered claimant's ability to drive, which suggested good use of arms and ability to turn neck).

Other evidence contradicted Plaintiff's subjective allegations of disabling pain. The record includes the opinions of two non-treating State Agency Physicians. On March 10, 2008 Dr. Anita L. Johnson reviewed the medical record noting the posterior lateral fusion on May 28, 1997, the myelogram of the spine on June 12, 2006, revealing no abnormalities, no herniation or stenosis and the September 2006 cardiolite stress test. Based on that review of the record she concluded Plaintiff to be capable of medium work (Tr. 272-279). On August 18, 2008 Dr. Frank Pennington reviewed the medical record including the Lumbar fusion in 1997 and pointed to no atrophy and mildly tender lumbar spine. He noted an unremarkable CT of the lumbar spine in June of 2006 and a normal cardoiolite stress test in September 2006 with atypical chest pain. He noted chronic lumbar radiculopathy with a successful dorsal column stimulator trial. On the basis of his review he found Plaintiff's allegation of back pain to be partially credible with unremarkable imaging of back and reduced function and mobility. Based on those limitations he found plaintiff capable of light work. In his opinion the ALJ specifically relied on these opinions:

> The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of "not disabled." Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions(as explained throughout this decision).

I conclude these two opinions further support the rejection of the extent of Plaintiff's allegations of disabling pain and therefore provide support for the ALJ's ultimate RFC finding.

Plaintiff also contends the ALJ's conclusion in unsupported when he found Plaintiff's use of medications did not suggest the presence of an impairment more limiting than he found. (Doc. 7, Plaintiff's Brief at 8, citing Tr. 20). However, there is evidence in the record that gives support to the ALJ's assessment. In February 2007, when Plaintiff initially sought treatment with Dr.

Smyth, he was on no pain medication, even though he quit work in October 2005 allegedly due to pain in his back and legs (Tr. 35, 39, 269). Plaintiff's activities in September 2008 included travel to Ohio for a fishing vacation (Tr. 320).

While Plaintiff had demonstrable pain, evidenced by his antalgic gait, from January 2009 through March 2009 (Tr. 310-14) his pain became "a little less severe" in March 2009 (Tr. 310). From April 2009 through February 2010, Plaintiff had a non-antalgic gait (Tr. 401, 402, 403, 404, 438, 468, 469, 470). After placement of the permanent DCS, Plaintiff reported he was doing well in terms of coverage for his legs and that he had been able to reduce his medicine (Tr. 503). Plaintiff testified that his pain medication and the DCS made his pain "bearable" (Tr. 42). The ALJ's conclusion that Plaintiff's use of medication did not suggest an impairment more limiting than the RFC for a limited range of light work is supported by substantial evidence.

Plaintiff contends the ALJ incorrectly discounted the opinion of his treating neurosurgeon, Dr. Dulebohn (Doc. 7, Plaintiff's Brief at 8). Dr. Dulebohn opined Plaintiff could not carry more than 10 pounds safely without displacing the DCS and anticipated that would be a lifetime restriction (Tr. 511). Dr. Dulebohn further opined Plaintiff could stand or walk for less than 2 hours, limited to 30 minutes in any position, and could not sit for more than 30 minutes without having to change position (Tr. 511). Dr. Dulebohn opined that while Plaintiff could force himself to work through a day, he would probably miss the next several days afterwards due to pain (Tr. 511). He believed Plaintiff was not able to be gainfully employed (Tr. 511). Such an opinion, if accepted would result in a finding that Plaintiff could not perform even a limited range of light work. However, the ALJ is not necessarily required to give that opinion controlling weight.

Unless the ALJ gives the opinion of Plaintiff's treating physician controlling weight, the

ALJ is required to give good reasons for the actual weight given.  *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §416.927 (c)(2).  Factors the ALJ must consider when weighing medical evidence include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.  20 C.F.R. § 416.927(c)(1)-(6).

Here the ALJ incorporated Dr. Dulebohn's opinion in part by noting Plaintiff's need to change positions occasionally into his RFC assessment (Tr. 15, 21, 511).  The ALJ gave Dr. Dulebohn's opinion regarding limitations related to lifting, carrying, standing, walking, and sitting little weight because the ALJ found such severe limitations to be unsupported by the record (Tr. 21).  Consistency of the opinion with the record as a whole is a valid basis for weighing a medical opinion. 20 C.F.R. § 416.927(c)(4).

The ALJ discussed Plaintiff's visits with Ms. Conrad and Dr. Smyth and the fact that Plaintiff walked with a non-antalgic tandem gait, and that even though he alleged back pain in any position, Dr. Smyth observed he was sitting in his chair in no acute distress (Tr. 18, 265).  The ALJ noted that imaging done in February 2009 showed no abnormalities of the lumbar spine and that April 2009 testing of Plaintiff's nerves and muscles was normal  (Tr. 19, 303, 350-52).  Finally, the ALJ noted that following placement of the DCS, Plaintiff was doing well even though still experiencing some back discomfort and had reduced his reliance on pain medications (Tr. 19, 503).  The ALJ determined Dr. Dulebohn's opinion was not consistent with the medical evidence in the record (Tr. 21).  Dr. Dulebohn's also opined Plaintiff was unable to carry on gainful employment.  However, as the Commissioner argues, that is an opinion on the ultimate

13

issue of disability and entitled to no weight.   *See* 20 C.F.R. § 416.927(d)(1); SSR 96-5p.

Plaintiff contends that the ALJ should have addressed Dr. Dulebohn's assessment that he could not sustain physical activity at the light exertion level (Doc. 1, Plaintiff's Brief at 10).   As mentioned above, the ALJ relied on the inconsistencies of Dr. Dulebohn's opinion with the medical evidence of record, and was not required to address each specific aspect of the opinion.

Plaintiff argues the ALJ's RFC assessment limited him to changing position from sitting to standing "occasionally," which was insufficiently frequent (Doc. 7, Plaintiff's Brief at 9). However, as the Commissioner argues, the VE testimony that supported the ALJ's assessment was in response to "a sit/stand option" with no frequency delineated (Tr. 51).   Therefore, the ALJ's characterization of the need to change position "occasionally" in the RFC assessment was supported by substantial evidence, because the VE's testimony was not based on <u>any</u> frequency limitation.   The VE identified jobs Plaintiff could perform with a sit/stand option. This provides substantial evidence to support the conclusion of the ALJ.

<u>The Assessment of Plaintiff's Credibility in Light of his Pain Complaints</u>

Plaintiff next argues the ALJ erred in his assessment of the Plaintiff's credibility when considering the level of pain he experiences. When a claimant alleges disability based on subjective complaints, he must present objective medical evidence of an underlying medical condition.   *See* 20 C.F.R. § 416.929; SSR 96-7p, 1996 WL 374186 (S.S.A.); *Walters*, 127 F.3d at 531.   If a medically determinable condition exists, the ALJ must decide if the objective medical evidence confirms the severity of the alleged symptoms arising from the condition or if the condition is of such severity that it could reasonably be expected to give rise to the alleged symptoms.   *See* 20 C.F.R. § 416.929; SSR 96-7p; *Walters*, 127 F.3d at 531.   "The absence of

sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters*, 127 F.3d at 531.

Plaintiff contends the ALJ concluded the record contained inconsistencies where none existed (Doc. 7, Plaintiff's Brief at 11-12). However, from a review of the Decision one can see that the ALJ identified several factors as being "contradictory," including Plaintiff's comments regarding smoking cigarettes (Tr. 21). The ALJ noted varying reports in the record regarding whether Plaintiff was a smoker (Tr. 21, 202, 256). Plaintiff explains that these were not contradictions because Plaintiff was being truthful on both occasions. He explains that when he denied being a smoker he was trying to quit, but that he was not able to, so subsequently indicated he was a smoker (Doc. 7, Plaintiff's Brief, pp 11-12).

Plaintiff also contends the ALJ improperly created an inconsistency regarding caring for his son. The ALJ noted Plaintiff reported in April 2009 that he took his son to school, cooked for him and attended his ball games, but in September 2009, reported none of these activities (Tr. 21, 142, 176). Plaintiff's explanation is that between April and September 2009 his son graduated from high school and was no longer living at home (Doc. 7, Plaintiff's Brief at 12). Even if this explanation is correct, the above inconsistencies were not the only factors the ALJ relied on to discredit Plaintiff's credibility

As the Commissioner notes, the ALJ relied on an additional inconsistency (Tr. 21). The ALJ noted in September 2009, Plaintiff alleged his medications caused confusion and difficulty reading (Tr. 21, 179). The ALJ noted that Plaintiff played cards and used his play station, which activities both required concentration (Tr. 21, 175, 179).

The ALJ further discounted Plaintiff's credibility because he found his decision to go on

15

an out-of-state fishing vacation in September 2008 suggested that he may have overstated his limitations (Tr. 20, 320). In his brief, Plaintiff suggests that perhaps he did not complete the vacation due to his physical problems ("What if the claimant didn't complete the vacation due to his physical problems . . . ") (Pl.'s Br. at 13), but there is no evidence of that in the record. Plaintiff had the burden of submitting evidence to support his claim of disability, but his unsupported suggestions do not meet this burden. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382(a)(3)(H)(I); 20 C.F.R. § 416.912(a),(c); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

The ALJ also pointed to Plaintiff's comment to Dr. Smyth in April 2007 that "he is not planning on trying to return to work" (Tr. 21, 265). At this same visit, Dr. Smyth noted Plaintiff stated any position was painful for him, yet he was sitting in a chair in no acute distress (Tr. 265). Dr. Smyth also noted the existing objective medical tests were "fairly unremarkable" (Tr. 265). The ALJ's conclusion that Plaintiff was not credible to the extent he alleged limitations inconsistent with the RFC assessment was supported by substantial evidence (Tr. 16).

Plaintiff contends the following paragraph undermines the ALJ's credibility assessment:

> Although [Plaintiff] has described daily activities which are limited, two factors weigh against considering these allegations to be strong evidence in favor of finding [Plaintiff] disabled. First, [Plaintiff] has alleged that his daily activities are limited but this was not objectively verified with any reasonable degree of certainty. Secondly, even if [Plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, [Plaintiff's] reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(Tr. 20).

Plaintiff contends the ALJ improperly required objective proof of the limitations on his activities of daily living. (Doc. 7, Plaintiff's Brief p. 13). He argues his testimony should be sufficient proof. The ALJ, however, did not find Plaintiff's own reports of his limitations fully credible (Tr. 21). The ALJ noted the lack of medical signs and findings ("relatively weak medical evidence") that supported the extensive limitations claimed by Plaintiff, and determined that an individual who could attend ball games, go on fishing vacations, do a few chores and drive, was not that limited (Tr. 14-22). Plaintiff also contends the ALJ did not specify the "other factors" he referred to, however, the ALJ explicitly incorporated his entire decision, including the "relatively weak medical evidence" as the other factors upon which he relied (Tr. 20).

The findings of the non-examining State Agency physicians referred to in detail above also support the ALJ's rejection of some of Plaintiff's subjective complaints. Based on a review of the record on March 10, 2008, Dr. Anita L. Johnson concluded Plaintiff to be capable of medium work (Tr. 272-279). On August 18, 2008 Dr. Frank Pennington reviewed the medical record including the Lumbar fusion in 1997 and pointed to no atrophy and mildly tender lumbar spine. He noted an unremarkable CT of the lumbar spine in June of 2006 and a normal cardoiolite stress test in September 2006 with atypical chest pain. He noted chronic lumbar radiculopathy with a successful dorsal column stimulator trial. Based on those limitations, he found plaintiff capable of light work. I conclude these two opinions support the rejection of the extent of Plaintiff's allegations of disabling pain.

In this case the ALJ acknowledged Plaintiff had a severe impairment of failed back syndrome, and that he had limitations flowing from that impairment that limited him to light work with the ability to change positions, he did not find Plaintiff's assertions of severe

17

limitations credible, in view of the lack of objective medical evidence and the various statements in the record. The ALJ decides questions of credibility, not the district court, and I conclude his finding is supported by substantial evidence. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner denying the plaintiff's application for benefits. Accordingly, I RECOMMEND:

(1) The plaintiff's motion for judgment on the pleadings (Doc. 6) be DENIED;
(2) The defendant's motion for summary judgment (Doc. 8) be GRANTED;
(3) A judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure AFFIRMING the Commissioner's decision which denied benefits to the plaintiff; and,
(4) This action be DISMISSED. [5]

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file of objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).